**In re Bill L. WALTERS, Debtor.**

**Bankruptcy No. SA 90–07833 JW.**

United States Bankruptcy Court, C.D. California.

Feb. 4, 1992.

Herbert Bernhard, Jeffer, Mangels, Butler & Marmaro, Los Angeles, Cal., for plaintiff.

Ronald Rus, Joel Miliband, Alvarado, Rus & Worcester, Orange, Cal., for trustee.

## MEMORANDUM OF DECISION

JOHN J. WILSON, Bankruptcy Judge.

### I. Introduction

Creditors Resolution Trust Company ("RTC") and Federal Deposit Insurance Corporation ("FDIC") (collectively, "Plaintiffs") move for an order permitting them access to the work performed by the accountants for the Chapter 7 Trustee in prosecuting an adversary proceeding against Debtor's wife which has been settled. For the reasons discussed *infra*, the motion is denied.

### II. Factual and Procedural Background

Bill L. Walters ("Walters" or "Debtor") filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code on November 2, 1990. R. Neil Rodgers ("Rodgers") was appointed Chapter 7 Trustee for the Walters bankruptcy estate on November 19, 1990. Rodgers was later replaced by James Joseph ("Joseph") (collectively, "Trustee") on December 11, 1991.

Walters was a prominent architect and real estate developer in the Denver, Colorado area prior to filing his bankruptcy petition. Many of Walters' development projects were funded by loans made by, or were otherwise connected with, Farwest Savings & Loan Association, F.A. ("Farwest") and Silverado Banking, Savings & Loan Association ("Silverado"). Walters personally guaranteed these obligations. RTC is now the Conservator for Farwest, and the FDIC is now the Receiver for Silverado. FDIC and RTC are prosecuting the claims of Farwest and Silverado against Walters in Walters' bankruptcy estate.

RTC and FDIC have filed adversary complaints against Walters, alleging that various allegedly fraudulent aspects of Walters' dealings with both Farwest and Silverado constitute grounds both for determining Walters' debts owed to the two institutions nondischargeable and for determining that Walters is not entitled to a discharge. Each has filed an adversary action under 11 U.S.C. § 727 (to determine

that Debtor is not entitled to a discharge). These two § 727 adversaries have been substantively consolidated under Adv. No. SA 91–3566 JW ("§ 727 Adversary"). Prosecution of FDIC's adversary action under 11 U.S.C. § 523 (Adv. No. SA 91–3623, to determine nondischargeability of debt) has been stayed pending the outcome of the § 727 Adversary.

In 1986, Walters married Jacqueline Walters ("Mrs. Walters"). Prior to their marriage, Debtor and Mrs. Walters executed a prenuptial agreement, pursuant to which Debtor transferred various residences, luxury automobiles, boats and other property to Mrs. Walters and to two family trusts ("Trusts"). In exchange for these transfers, Mrs. Walters waived any marital property rights she might have against Debtor.

In late 1990, Trustee filed an adversary complaint against Mrs. Walters and Trusts, all non-debtors. Trustee's complaint alleged, *inter alia,* that these transfers were fraudulent as to Debtor's creditors, and sought to recover the value of those transfers (approximately $12,000,000.00) from Mrs. Walters and from the Trusts.

The adversary action against Mrs. Walters was hotly contested, and the attorneys and accountants employed by both Trustee and Mrs. Walters devoted considerable resources and preparation to the case. Eventually, Trustee and Mrs. Walters entered into a settlement agreement, pursuant to which the adversary action against Mrs. Walters was dismissed by order of this Court entered on January 21, 1992.

Plaintiffs now move this Court under 11 U.S.C. § 704(7) for an order granting them access to the information developed by Trustee's accountants ("Audit Materials") while investigating and prosecuting the action against Mrs. Walters. Plaintiffs contend that:

(A) The Audit Materials are property of the estate; and

(B) Plaintiffs are entitled to access to Audit Materials, without payment and as a matter of course, because they were developed by Trustee for the benefit of all the estate's creditors, of whom Plaintiffs are the two largest.

In opposition, Trustee contends he is not required to produce the Audit Materials because:

(A) The Audit Materials are not the kind of information concerning the estate and the estate's administration which a trustee must provide to parties in interest and therefore do not fall within the ambit of § 704(7);

(B) Even if the Audit Materials were covered by § 704(7), the Trustee cannot be required to produce the Audit Materials because:

(1) they are privileged under accountant-client privilege;

(2) they are privileged under attorney-client privilege; and/or

(3) they are protected from discovery under attorney work product doctrine.

### III. Discussion

Plaintiffs have based their motion for access to Audit Materials in part on 11 U.S.C. § 704(7). Section 704, entitled "Duties of trustee," states in relevant part:

The trustee shall—

. . . .

(7) unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a $Y$ party in interest[.]

Plaintiffs argue that, as creditors of Walters' estate, they are entitled under § 704(7) to cost-free access to the Audit Materials. Plaintiffs argue that they have already vicariously funded the preparation of the Audit Materials since the fees of Trustee's professionals, including the accountants, will be paid out of Walters' bankruptcy estate.

Plaintiffs cited no cases supporting such an expansive construction of § 704(7), and this Court's review of the case law has uncovered none. While it is not contested that Plaintiffs would qualify as a "party in interest" under § 704(7), this Court cannot accept the argument that the Audit Materials constitute "information concerning the estate and the estate's administration" ei-

ther under the plain language of the section, the broad context of the Bankruptcy Code generally, or under the specific facts of this case.

While cases interpreting this subsection are few, it is clear that information developed by the Trustee's professionals for the prosecution of an adversary proceeding is not "information concerning the estate and the estate's administration" as contemplated under § 704(7). In *In re Modern Office Supply, Inc.*, 28 B.R. 943 (Bankr. W.D.Okla.1983), a creditor bank moved to convert the case from Chapter 11 to Chapter 7. The creditor alleged that the debtor, as debtor in possession, had failed to carry out its responsibilities as trustee under § 704(7). The debtor in possession in *Modern Office Supply* was obligated under Local Rules and court orders (1) to report on the financial condition of the estate every month, and (2) to file an interim financial statement by the 15th of each month, but the debtor had not complied with the various reporting requirements imposed upon it for four months.

The bankruptcy court in *Modern Office Supply* stated that the debtor in possession acts as a fiduciary to the estate's creditors, and that reporting requirements imposed on the debtor were especially important when the debtor continues to operate its business on behalf of its creditors:

> The importance of complete and timely financial reporting by a business receiving the protection afforded by the Bankruptcy Code is emphasized by the facts of this case. Throughout the proceeding several creditors have diligently sought their right to adequate protection and on more than one occasion the court has allowed the business to continue on assurances from the debtor that there would be no diminution of the interests of secured creditors; and that operations could and would be continued without reduction in the values of inventory and accounts receivable. Unfortunately, this has not been the case.

The information required to be provided by the trustee-debtor in possession in *Modern Office Supply* was information concerning "estate administration:" that is, information regarding the financial condition and continued operation of the debtor's business, which is the foundation of a Chapter 11 estate. Such information permits the creditors to determine whether the trustee (or debtor in possession, as in *Modern Office Supply*) is protecting their interests in the property of the estate. Such information cannot be analogized to the Audit Materials in question in this case. If Plaintiffs sought to determine the status of the adversary proceeding against Mrs. Walters, while the adversary proceeding was still pending, and requested information concerning what steps Trustee was taking to prosecute that action diligently, then that information would be analogous to the information required to be produced in *Modern Office Supply*. The Audit Materials, however, essentially were prepared to assist Trustee in determining the extent of the facts underlying his causes of action against Mrs. Walters and the Trusts.[1] Creditors do not need such information to decide whether their interests are being protected.

As in *Modern Office Supply*, the information sought from the trustee in *In re Sports Accessories, Inc.*, 34 B.R. 80 (Bankr.D.Md.1983), directly concerned estate administration and was not analogous to the Audit Materials here. In *Sports Accessories*, a creditor moved the bankruptcy court for an order directing the Chapter 7 trustee to furnish information regarding estate administration. The creditor and the trustee were concurrently opposing parties in District Court litigation. The trustee argued that the requested information was available to the creditor through discovery in the District Court action, and that therefore the trustee should not be required to produce the information under § 704(7) until discovery was completed in the District Court. The bankruptcy

---

1. It is undisputed in this case that Trustee diligently investigated and prosecuted the adver-

sary action against Mrs. Walters and the Trusts.

court noted that the obligation of the trustee to furnish information regarding estate administration is a strong one. *Id.* at 82.[2]

In *Sports Accessories*, the creditor sought to determine what, if anything, the trustee had done to collect over $350,000 in accounts receivable which were apparently still uncollected three months after the entry of an order for relief in the case. In *Sports Accessories*, the court ordered the trustee to turn over the requested information.[3] As discussed *supra* in *Modern Office Supply*, the information required to be produced by the trustee to the creditor in *Sports Accessories* was information concerning the estate and the estate's administration. Whether and to what extent a Chapter 7 trustee has acted to collect considerable accounts receivable for distribution to creditors constitutes "information concerning the estate and the estate's administration" under § 704(7). The same cannot be said of the Audit Materials.

Plaintiffs might have contended, relying on *Sports Accessories*, that Trustee must produce the Audit Materials even though Trustee and FDIC are adversaries, as explained *infra*. Such reliance, however, would be misplaced. The existence of an adversarial relationship between the trustee and a creditor in *Sports Accessories* did not diminish the trustee's duties under § 704(7) to provide the creditor with *information concerning the estate and the estate's administration*. The important distinction between *Sports Accessories* and this case, however, is that the Audit Materials are not the sort of information encompassed by § 704(7).

Under the facts of this case, the result requested by Plaintiffs would be extremely unusual, to say the least. Trustee and FDIC (one of the Plaintiffs) have been adversaries in a struggle over entitlement to certain mineral-rights leases of Debtor.[4] In addition, this Court notes that Trustee and FDIC previously moved this Court for an order allowing them jointly to fund the discovery in the adversary against Mrs. Walters. FDIC proposed to pay Trustee $100,000 towards the expenses of prosecuting that adversary, in exchange for access to Trustee's discovery and for priority in the first $500,000 recovered from Mrs. Walters and the trust defendants in that adversary.[5] However, this Court denied Trustee and FDIC's joint motion, noting the obvious conflicts of interest between Trustee and FDIC. It would be peculiar indeed if FDIC were now to reap, at no expense whatsoever to it, such extravagant rewards from its opponent's discovery in an unrelated case merely by the happenstance of one party being a creditor of Walters and the other being the trustee of Walters' bankruptcy estate.

### IV. Conclusion

Based on the foregoing, this Court cannot accept Plaintiffs' contention that the Audit Materials constitute "information concerning the estate and the estate's administration" under § 704(7) such that Trustee must on that basis turn over the Audit Materials to Plaintiffs. Because of

---

**2.** To the extent the trustee feared the information would later be used for unfair tactical advantage in District Court, the bankruptcy court directed the trustee to raise that issue in District Court. *Id.* at 81.

**3.** Specifically, the court ordered the trustee to turn over within a reasonable time supplementary information concerning the following items: (1) What accounts receivable were outstanding as of March 24, 1981? (2) What accounts receivable have been collected by the trustee since that date? (3) What litigation has been filed by the trustee to collect any accounts receivable? (4) What cases have been turned over for collection? (5) What accounts has the trustee elected not to pursue further?

*Id.* at 82. Note that the court directed the Trustee only to state what litigation had been filed to collect the receivables, and what accounts the trustee had elected not to pursue: the court did not direct the trustee to turn over all the discovery and work product generated in reaching those determinations.

**4.** Trustee filed an adversary complaint against FDIC on October 4, 1991, seeking declaratory relief on this issue (Adv. No. SA 91–3801).

**5.** Even at that point, FDIC apparently realized that it would be less costly to pay Trustee for access to the discovery than for FDIC to attempt to duplicate it.

this determination, this Court need not address Trustee's contentions regarding privilege and work product. Plaintiffs' motion is hereby denied.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law. Counsel for Trustee shall lodge and serve a proposed order denying Plaintiffs' motion for access to the Audit Materials consistent with this Memorandum of Decision.